UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TONY RAY JONES,

       Petitioner,

  v.

J. SOTO,

       Respondent.

Case No. 15-cv-01883-EMC

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

Tony Ray Jones filed this *pro se* action for a writ of habeas corpus under 28 U.S.C. § 2254. The Court issued an order to show cause why the writ should not be granted. Respondent has filed an answer and Mr. Jones has filed a traverse. For the reasons explained below, the petition will be **DENIED**.

## II. BACKGROUND

A.   The Crime

The California Court of Appeal described the criminal episode that led to Mr. Jones' conviction:

> On the evening of February 19, 2012, Armando Cuatlatl was about to enter an Oakland liquor store when two Black males came up to him. Defendant, whom Cuatlatl positively identified in court, pointed a gun at him. Defendant was wearing a black jacket, black gloves, and a black bandana over the lower half of his face. The other man took $40 and an ATM card from Cuatlatl. The two then fled on foot.
>
> James Gates and Nakia Dickens were driving in Gates's van about a block from the liquor store. Gates had stopped the vehicle and was talking to an acquaintance when defendant—whom Gates knew and who he positively identified in court—and another Black male came

> running up to the van from the direction of the liquor store. Dickens also identified defendant as the one of the men who entered the van carrying a gun.
>
> Defendant identified himself to Gates, and told him to open the door. Defendant was wearing black gloves, had a black bandana over his face, and was carrying a gun. Defendant and other man entered the van.
>
> The men's entry was observed by Oakland Police Officer Cesar Garcia, who believed he might be witnessing a carjacking or some other crime. As the van began moving, Officer Garcia followed. When defendant caught sight of Garcia's cruiser, he stated "I ain't about to go back to jail." Garcia radioed for assistance to halt the vehicle.
>
> Gates told defendant to get out of the vehicle, but Dickens kept driving because Gates was afraid of defendant, who was "fumbling with the gun." Gates repeated that defendant had to get out. Defendant made remarks which Gates and Dickens interpreted as evidencing defendant's resolve to confront the officers.
>
> Officer Garcia observed defendant roll out of the moving van, holding a gun. Defendant, still holding the gun, fled on foot. Officer Garcia left his vehicle and followed. During the ensuing chase, Officer Garcia, believing defendant was about to shoot him, shot defendant. When defendant was taken into custody, he was wearing gloves and a bandana, but no gun was in his possession.
>
> Another officer discovered a gun along the route of defendant's foot chase. Upon examination, no fingerprints or usable DNA linked defendant to the weapon. However, a fingerprint of Pablo Rodriguez was found on the gun's magazine. Rodriguez testified that he had shown the gun to defendant prior to it being stolen.

*People v. Jones*, Cal. Ct. Appeal No. A138504, May 6, 2014 opinion ("Cal. Ct. App. Opinion") at 1-2.

B.  Procedural History

Following a jury trial in Alameda County Superior Court, Mr. Jones was convicted of second degree robbery and possession of a firearm by a felon. *See* Cal. Penal Code §§ 211, 29800(a)(1). The jury also found that he had used a firearm during the commission of the robbery. Mr. Jones admitted that he had suffered two prior prison terms. On April 25, 2013, he was sentenced to a total of 15 years and eight months in prison.

Mr. Jones appealed. The California Court of Appeal affirmed the judgment of conviction on May 6, 2014. The California Supreme Court denied his petition for review on July 9, 2014.

Mr. Jones then filed this action. In his federal petition for writ of habeas corpus, he alleged

that his Fourteenth Amendment right to due process was violated by the admission of evidence of his "uncharged prior juvenile carjacking offense from 2003." Docket No. 1 at 11. Mr. Jones also alleged that the admission of this evidence violated his state law rights. The Court ordered Respondent to respond to the federal due process claim and dismissed the state law claim because federal habeas relief is not available for state law errors. *See* Docket No. 5 at 2. Respondent has filed an answer to the petition, and Mr. Jones has filed a traverse.

### III. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Alameda County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

### IV. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's

3

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). "When there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst*, 501 U.S. at 803. The presumption that a later summary denial rests on the same reasoning as the earlier reasoned decision is a rebuttable presumption and can be overcome by strong evidence. *Kernan v. Hinojosa*, No. 15-833, slip op. at 3 (U.S. May 16, 2016). Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default and applies to decisions on the merits. *Barker*, 423 F.3d at 1092 n.3. In other words, when the last reasoned decision is a decision on the merits, the habeas court can look through later summary denials to apply § 2254(d) to the last reasoned decision.

### V. DISCUSSION

A. Due Process Claim Based On Admission Of Evidence Of Prior Bad Act

1. Background

Before trial began, the prosecution filed a motion *in limine* to admit evidence of a 2003 carjacking and robbery committed by Mr. Jones as evidence of intent and a common plan.[1] *See* CT 421-35. The prosecution's motion was made under California Evidence Code section 1101(b). The general rule, stated in section 1101(a), is that evidence of a person's character (such as a prior bad act) is generally inadmissible to prove a defendant's conduct on a specified occasion. Section

---

[1] The prosecution also moved for the admission of evidence of a January 2012 robbery, but the trial court ruled that incident inadmissible.

4

1101(b) provides the following exceptions to that general rule: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." Cal. Evid. Code § 1101(b).

At the hearing on the motion *in limine*, the only information about the 2003 crime was the following description provided in the prosecution's motion:

> On February 23, 2003, around 11 p.m., defendant and an African American male adult approached victim Robert Washington's car as he was exiting a gas station in Richmond. The victim was 70 years old at the time and was alone in his vehicle. As defendant walked [past] Mr. Washington's car at the exit of the gas station, defendant asked what time it was and if he could borrow Mr. Washington's phone. The defendant was dressed in dark clothing at the time. Mr. Washington let defendant and the other male use his phone, but after a few minutes he asked for his phone back so he could leave. At that point, the second male approached Mr. Washington with a black semi-automatic gun and pointed it at Mr. Washington. The men ordered Mr. Washington out of the car and the defendant got in the passenger side door. Both defendant and the other men [man?] drove off, stealing Mr. Washington's car and his cell phone. Mr. Washington called the police from a payphone to report the crime. Defendant was subsequently identified in a photo lineup. (CT 424.)

Defense counsel opposed the motion to admit the evidence, arguing that the incident was too remote in time to be admissible. RT 73. The prosecution responded that Mr. Jones had not led a crime-free life in the interim between the 2003 carjacking/robbery and the 2012 robbery, stating that "almost every two years, he's committed and been convicted of another felony since that happened." *Id.*

The trial court ruled *in limine* that evidence of the 2003 carjacking/robbery was admissible under California Evidence Code section 1101(b) as evidence of intent and a common plan. The trial court explained that there had been a conviction, and the 2003 crime "looks to the Court to be material to the issue of intent, intent to deprive the owner of possessions permanently. And it also is relevant to prove intent, common plan. So the Court feels that the probative value in this particular incident outweighs the prejudicial effect. Sufficiently similar. It's highly probative. And the Court would allow it to be used in the case-in-chief to be proved by a preponderance of the

evidence." RT 73-74.

As a result of that ruling, at Mr. Jones' trial for the 2012 robbery of Mr. Cuatlatl, Robert Washington was called to testify about being the victim of the 2003 carjacking/robbery/robbery. Mr. Washington's testimony differed in several ways from above-quoted description of the 2003 crime that had been presented at the *in limine* hearing. His testimony at trial was that "on the morning of February 23, 2003, he was sitting in his car at a gas station in Richmond when he was approached by two Black teenagers, one male, one female. After Washington allowed the female to use his cell phone, the male pointed a gun at Washington, ordered him out of the car, and drove away in the car. Washington identified defendant as the gunman." Cal. Ct. App. Opinion at 2-3.

On appeal, Mr. Jones argued that the trial court's ruling was an abuse of discretion under California Evidence Code sections 1101 and 352, and that it violated his federal constitutional right to a fair trial. Mr. Jones urged that the charged crime and the 2003 carjacking/robbery were not sufficiently similar to prove that he acted with a common plan, and that the evidence of the 2003 crime should have been excluded under California Evidence Code section 352 because it was cumulative evidence of intent.[2]

The California Court of Appeal explained first that it was required to evaluate the trial court's *in limine* ruling in the context of the record before the trial court at the *in limine* hearing. This was required because the defense never raised an objection at trial that the evidence introduced at trial had significant differences from the description of the incident presented in the motion *in limine* upon which the trial court had relied when it issued its ruling that the evidence about the 2003 crime was admissible. Cal. Ct. App. Opinion at 5-7. The California Court of Appeal then rejected Mr. Jones' challenge to the trial court's evidentiary ruling. The state appellate court explained the state law principles regarding the admission of evidence to prove intent and common plan and upheld the trial court's ruling under California Evidence Code

---

[2] California Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

1  section 1101(b).[3]  The state appellate court determined that "[t]here are sufficient common
2  features that the evidence would support a rational inference that there was a plan. It would also
3  satisfy the lesser showing required for a rational inference that defendant 'probably harbor[ed] the
4  same intent in each instance."' *Id.* at 8 (quoting *People v. Ewoldt*, 7 Cal. 4th 380, 402 (Cal. 1994)
5  (alteration in original)).  The California Court of Appeal further determined that the evidence was
6  not unduly prejudicial such that it should have been excluded under California Evidence Code
7  section 352.
8      The California Court of Appeal also rejected the argument that the admission of the
9  evidence violated Mr. Jones' state and federal due process rights, concluding with a determination

---

[3] The California Court of Appeal discussed the similarities needed to prove identity and common plan:

> "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] '[T]he recurrence of a similar result ... tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act....' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]
>
> "A greater degree of similarity is required in order to prove the existence of a common design or plan. As noted above, in establishing a common design or plan, evidence of uncharged misconduct must demonstrate 'not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' [Citation.] '[T]he difference between requiring similarity, for acts negativing innocent intent, and requiring common features indicating common design, for acts showing design, is a difference of degree rather than of kind; for to be similar involves having common features, and to have common features is merely to have a high degree of similarity.' [Citations.]
>
> "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual.... Unlike evidence of uncharged acts used to prove identity, the plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense. [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402–403.)

7

1 that, even if there had been an error, it was harmless:

> 'The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair.' [Citation.]" (*People v. Jablonski* (2006) 37 Cal.4th 774, 805.)
>
> The evidence of Washington's robbery was not the sort to unhinge an Alameda County jury of this day and age. The victim was elderly, but no physical harm was inflicted upon him. The threat of such harm, even if only implicit, was undoubtedly traumatic to Washington, but that type of threat almost defines the crimes of robbery and carjacking. (*See In re Travis W.* (2003) 107 Cal.App.4th 368, 375 ["as it is with robbery, the threat of force is implicit in carjacking"].) The robbery of Washington was nine years before the charged incident, but it was not stale as a matter of law. Although evidence of the Washington robbery did ultimately prove to be cumulative to other evidence introduced at trial on the issue of defendant's intent, this was not known to the trial court when it made its ruling, and does not apply to the evidence being used on the issue of common plan. In light of all of these circumstances, we cannot conclude that the trial court's ruling amounted to an abuse of the court's discretion or tipped the trial into fundamental unfairness.
>
> Even if we assumed, solely for purposes of this appeal, that the trial court's ruling did qualify as an abuse of discretion, such error would not command reversal. The case against defendant, while not overwhelming, was certainly more than commonly strong. Defendant was positively identified by the victim and others as armed and fleeing from the scene. Defendant made statements after the robbery indicating a consciousness of guilt. Defendant was under observation virtually from the robbery to his speedy apprehension, still wearing the distinctive bandana. Thus, the assumed error would not be prejudicial according to state or federal standards. (See People v. Cole (2004) 33 Cal.4th 1158, 1195.)

Cal. Ct. App. Opinion at 8-9.

The California Court of Appeal's decision is the last reasoned decision from a state court. This Court therefore considers whether that decision was contrary to, or an unreasonable application of, clearly established federal law as set forth by the U.S. Supreme Court. *See Ylst v. Nunnemaker*, 501 U.S. at 803; *Barker*, 423 F.3d at 1092 n.3.

2. <u>Analysis of Federal Due Process Claim</u>

Mr. Jones contends that the admission of evidence of the 2003 carjacking/robbery violated his due process right to a fair trial because it tended to show that he had a propensity to commit robbery, i.e., that he was the sort of person who carried around deadly weapons and used them. *See* Docket No. 8-35 at 35.

8

The United States Supreme Court has never held that the introduction of propensity or other allegedly prejudicial evidence violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 68-70 (1991). In fact, *Estelle v. McGuire* specifically left open the question regarding propensity evidence. *See id.* at 75 n.5 ("we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").

In *Estelle v. McGuire*, the defendant was on trial for murder of his infant daughter after she was brought to a hospital and died from numerous injuries suggestive of recent child abuse. Defendant told police the injuries were accidental. Evidence was admitted at trial that the coroner discovered during the autopsy older partially healed injuries that had occurred 6-7 weeks before the child's death. *Id.* at 65. Evidence of the older injuries was introduced to prove "battered child syndrome," which "exists when a child has sustained repeated and/or serious injuries by nonaccidental means." *Id.* at 66. The state appellate court had held that the proof of prior injuries tending to establish battered child syndrome was proper under California law. *Id.* In federal habeas proceedings, the Ninth Circuit found a due process violation based in part on its determination that the evidence was improperly admitted under state law. *Id.* at 66-67. The U.S. Supreme Court first held that the Ninth Circuit had erred in inquiring whether the evidence was properly admitted under state law because "'federal habeas corpus relief does not lie for errors of state law.'" *Id.* at 67. The Supreme Court then explained:

> The evidence of battered child syndrome was relevant to show intent, and nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence simply because the defense chooses not to contest the point. [¶] Concluding, as we do, that the prior injury evidence was relevant to an issue in the case, we need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial. We hold that McGuire's due process rights were not violated by the admission of the evidence. *See Spencer v. Texas*, 385 U.S. 554, 563–564, 87 S.Ct. 648, 653–654, 17 L.Ed.2d 606 (1967) ("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. . . . But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of

9

criminal procedure").

*Estelle v. McGuire*, 502 U.S. at 70 (omission in original).

The cited case, *Spencer v. Texas*, 385 U.S. at 563, held that the admission of evidence of prior convictions did not violate due process. The Supreme Court explained in *Spencer* that, although there may have been other, perhaps better, ways to adjudicate the existence of prior convictions (e.g., a separate trial on the priors after the trial on the current substantive offense resulted in a guilty verdict), Texas' use of prior crimes evidence in a "one-stage recidivist trial" did not violate due process. *Id.* at 563-64. "In the face of the legitimate state purpose and the long-standing and widespread use that attend the procedure under attack here, we find it impossible to say that because of the possibility of some collateral prejudice the Texas procedure is rendered unconstitutional under the Due Process Clause as it has been interpreted and applied in our past cases." *Id.* at 564.

*Estelle v. McGuire* also cited to *Lisenba v. California*, 314 U.S. 219, 228 (1941), in support of the conclusion that the introduction of the battered child syndrome evidence did not so infuse the trial with unfairness as to deny due process of law. *See Estelle v. McGuire*, 502 U.S. at 75. In *Lisenba*, the Supreme Court rejected a claim that the admission of inflammatory evidence violated the defendant's due process rights. The evidence at issue in *Lisenba* was live rattlesnakes and testimony about them to show they had been used by the defendant to murder his wife. "We do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence. We cannot hold, as petitioner urges, that the introduction and identification of the snakes so infused the trial with unfairness as to deny due process of law. The fact that evidence admitted as relevant by a court is shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its reception a violation of due process." *Lisenba*, 314 U.S. at 228-29.

These three Supreme Court cases declined to hold that the admission of prejudicial or propensity evidence violates the defendant's due process rights. No Supreme Court cases since *Estelle v. McGuire* have undermined the holdings in these three cases. In other words, there is no Supreme Court holding that the admission of prejudicial or propensity evidence violates due

process.

When the U.S. Supreme Court "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, 'it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.' . . . Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (alterations in original) (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006), and 28 U.S.C. § 2254(d)(1)).

Mr. Jones cannot obtain federal habeas relief on his claim that the admission of the evidence violated his right to due process because it showed a propensity to commit robbery. Relief is precluded because, as discussed above, the United States Supreme Court has never held that the introduction of propensity or other allegedly prejudicial evidence violates due process. *See Wright*, 552 U.S. at 125-26 (no relief on denial of counsel claim under *United States v. Cronic*, 466 U.S. 648 (1984), because Supreme Court had never determined the standard to apply where attorney appeared at hearing by speakerphone); *see, e.g., Foy v. Gipson*, 609 F. App'x 903 (9th Cir. 2015) (no habeas relief on claim that admission of propensity evidence (i.e., that defendant assaulted another woman after he assaulted victim in this case) violated defendant's right to due process because *Estelle v. McGuire's* reservation of the question whether propensity evidence violates due process "forecloses the conclusion that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law); *Munoz v. Gonzales*, 596 F. App'x 588 (9th Cir. 2015) (even if admission of evidence of prior auto theft was improperly admitted to show propensity, habeas relief foreclosed because *Estelle v. McGuire* reserved the question whether propensity evidence violated due process); *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (denying habeas relief upon finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)); *Alberni v. McDaniel*, 458 F.3d 860, 865 (9th Cir. 2006) (denying habeas relief on claim that due process was violated by admission of evidence of defendant's past violent actions and explosive temper to show propensity due to *Estelle v. McGuire's* reservation of the question whether propensity evidence violates due process); *Moses v. Payne*, 555 F.3d 742, 760

11

1    (9th Cir. 2009) (holding that, where balancing test for excluding evidence is creation of Ninth

2    Circuit law and Supreme Court has not directly considered whether trial court's exercise of

3    discretion to exclude evidence violated defendants' constitutional right to present evidence, state

4    court's failure to use Ninth Circuit's balancing test is not contrary to or an unreasonable

5    application of clearly established Supreme Court precedent).

6         The Supreme Court has established a general principle of "fundamental fairness," i.e.,

7    evidence that "is so extremely unfair that its admission violates 'fundamental conceptions of

8    justice'" may violate due process. *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting

9    *United States v. Lovasco*, 431 U.S. 783, 790 (1977) (due process was not violated by admission of

10   evidence to identify perpetrator and link him to another perpetrator even though the evidence also

11   was related to crime of which defendant had been acquitted); *see, e.g., Gimenez v. Ochoa*, No. 14-

12   55681, slip op. at 17 (9th Cir. May 9, 2016) (petitioner who showed that a vigorous debate had

13   sprung up as to the validity of the "triad-only" theory of shaken baby syndrome in the years since

14   his murder conviction, "failed to show that permitting the prosecution's experts to testify based on

15   a triad-only theory of [shaken baby syndrome] was 'so extremely unfair that it[] . . . violated

16   fundamental conceptions of justice.'"). Thus, apart from the alleged impropriety of admitting

17   propensity evidence, a court may consider whether the evidence was "so extremely unfair that its

18   admission violates 'fundamental conceptions of justice.'" *Dowling,* 493 U.S. at 352. Mr. Jones

19   does not identify any vice in the evidence other than that it tended to show his propensity to

20   commit robberies, and does not meet the very demanding standard of being so extremely unfair

21   that its admission violates fundamental conceptions of justice.

22        In this circuit, the admission of prejudicial evidence may make a trial fundamentally unfair

23   and violate due process "[o]nly if there are *no* permissible inferences the jury may draw from the

24   evidence." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). "Evidence introduced by

25   the prosecution will often raise more than one inference, some permissible, some not; we must

26   rely on the jury to sort them out in light of the court's instructions. Only if there are

27   *no* permissible inferences the jury may draw from the evidence can its admission violate due

28   process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'

12

1  Only under such circumstances can it be inferred that the jury must have used the evidence for an
2  improper purpose." *Jammal*, 926 F.2d at 920 (internal citation and footnote omitted).[4]
3  Here, the jury could draw the inference of a common plan and intent to steal from the
4  evidence of the 2003 carjacking/robbery. Although the trial testimony of Mr. Washington showed
5  the similarities between the 2003 carjacking/robbery and the 2012 robbery to be weaker than
6  thought when the trial court ruled *in limine* that the evidence was admissible, there still were
7  several similarities between the two crimes. Mr. Washington's testimony about the 2003 crime
8  showed similarities between the 2003 carjacking/robbery and the 2012 robbery that would have
9  supported rational inferences of a common plan in the two crimes and that Mr. Jones harbored the
10  same intent in each crime. Both the 2003 and 2012 crimes involved a 2-on-1 approach (i.e., two
11  perpetrators robbing one victim); both involved a single male victim who was alone; and both
12  involved the brandishing of a pistol by defendant to effectuate the taking of the victim's property.
13  Because the inferences of a common plan and intent were permissible, the state appellate court did
14  not unreasonably apply Supreme Court authorities in holding that the admission of the evidence of
15  the 2003 carjacking/robbery did not violate due process. *See Jammal*, 926 F.2d at 920.

---

[4] In *Jammal*, the police found a gun, $47,000 and drugs in the trunk of Jammal's stolen car when they arrested Willis, who had stolen Jammal's car; 18 months later, the police found $135,000 (but no drugs) in the trunk of Jammal's car when they arrested Jammal. At trial, Willis said he had no idea the drugs and money were in the trunk of Jammal's stolen car until police opened it. The prosecution urged the jury to infer that both the drugs and the $47,000 found in the trunk of Jammal's car when Willis was arrested belonged to Jammal since Jammal later was arrested also with a large stash of cash in his trunk. Jammal unsuccessfully objected that this evidence effectively branded him a drug dealer and was therefore inadmissible character evidence. The Ninth Circuit explained that state law evidence rules were beside the point in a federal habeas proceeding and any problem in the jury inferring that Jammal had put the $47,000 and drugs in the car earlier (even if impermissible under state law) was not a constitutional problem because the inference that Jammal had put both the $47,000 and drugs in the trunk on an earlier occasion was a "rational inference" the jury could draw from the evidence that he was caught with $135,000 in his trunk. *Jammal*, 926 F.2d at 920.

*Jammal* is one of the few cases that gives any guidance as to what might amount to the introduction of evidence that might amount to fundamental unfairness. The Ninth Circuit continues to use the *Jammal* "permissible inference" test in habeas cases governed by the AEDPA. *See, e.g., Noel v. Lewis*, 605 F. App'x 606, 608 (9th Cir. 2015) (admission of gang evidence did not violate due process); *Lundin v. Kernan*, 583 F. App'x 686, 687 (9th Cir. 2014) (citing *Jammal* and concluding that admission of graffiti evidence did not violate due process because there were permissible inferences to be drawn); *Gonzalez v. Knowles*, 515 F.3d 1006, 1011 (9th Cir. 2008) (citing *Jammal* and concluding that evidence of prior bad acts did not violate due process).

13

1  Mr. Jones contends that evidence of intent was unnecessary because it was not really
2  disputed at trial at which the main issue was the identity of the robber. However, at trial, defense
3  counsel's closing argument did not concede the issue. Defense counsel actually intimated that
4  perhaps a robbery had not actually occurred as he pursued his theme that the Oakland Police
5  Department was attempting to do an after-the-fact justification for shooting Mr. Jones. *See* RT
6  1701 (defense counsel argues, "Mr. Cuatlatl, if he was robbed, he was robbed by two different
7  individuals."); RT 1712 (defense counsel argues that the driver and owner of the white van were
8  not charged with being accomplices "because the district attorney knows that there was no
9  robbery" and neither was held accountable "because there was no robbery and they know that").
10 Although it may not have been the focal point, intent was an issue that the prosecution did need to
11 prove because it was an element of the offense. *See* CT 585 (to prove robbery, the People must
12 prove, among other things, "[w]hen the defendant used force or fear to take the property, he
13 intended to deprive the owner of it permanently"). Regardless of the centrality of the issue of
14 intent, the Supreme Court has observed that the Fourteenth Amendment Due Process Clause does
15 not require "the State to refrain from introducing relevant evidence simply because the defense
16 chooses not to contest the point." *Estelle v. McGuire*, 502 U.S. at 70.

Any possibility that the evidences made the trial fundamentally unfair was even more remote because the jury was properly instructed on the limited purpose for which it could use the evidence about the 2003 carjacking/robbery. [5] The jury instruction merely permitted, rather than

---

[5] The jury was given the following modified version of CALCRIM 375, a pattern instruction:

> The People presented evidence that the defendant committed the offenses of Robbery and Carjacking that were not charged in this case against Robert Washington.
>
> You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed these offenses. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.
>
> If the People have not met this burden, you must disregard this evidence entirely.

14

directed, the jury to use the 2003 carjacking/robbery evidence as evidence of common plan or intent and only upon the specified circumstances. Moreover, the prosecutor's comments about the 2003 crime were brief, were based on the evidence presented at trial, and were not inconsistent with the jury instruction. *See* RT 1682-84. The prosecutor only returned to the issue of the 2003 crime in her rebuttal to respond to defense counsel's effort to misdirect the jury by arguing that Mr. Jones had already been punished for the 2003 crime. *Compare* RT 1695 (defense counsel argues that the 2003 carjacking evidence should make the jurors "angry" because he was a minor, had been punished – "gave back to society" – "And what happened to double jeopardy?") *with* RT 1751 (prosecutor arguing in rebuttal, "I just want to be clear about the evidence that came out about Robert Washington. No one is prosecuting the defendant again for that crime. When the defense attorney was throwing out double jeopardy, I just want to make sure you know. That is not a decision you have to make here, but that is evidence that is admissible in cases to show someone's intent and their common plan."), *and* RT 1755 (prosecutor arguing in rebuttal that "the prior with Mr. Washington. We know that this is the common plan and the intent of the defendant."). Mr. Jones does not find fault with the jury instruction or the prosecutor's closing argument.

---

> If you decide that the defendant committed the offenses, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not:
>
> > The defendant acted with the intent to rob Armando Cuatlatl in this case; or
> >
> > The defendant had a plan to commit the offenses alleged in this case.
>
> Do not consider this evidence for any other purpose except for the above listed limited purposes.
>
> If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Second Degree Robbery. The People must still prove every charge beyond a reasonable doubt.

CT 584.

15

The admission of the evidence did not render his trial fundamentally unfair. "Even if there are no permissible inferences the jury can draw from the evidence in question, due process is violated only if the evidence is 'of such quality as necessarily prevents a fair trial.'" *Hovey v. Ayers*, 458 F.3d 892, 923 (9th Cir. 2006) (quoting *Jammal*, 926 F.2d at 920); *see e.g., id.* (due process not violated by admission of "emotionally compelling" evidence showing victim as a young girl, even though it was irrelevant); *Plascencia v. Alameida*, 467 F.3d 1190, 1203-04 (9th Cir. 2006) (citing *Jammal* and concluding that some evidence about the use of a drug was irrelevant but its admission did not make the trial fundamentally unfair). As the California Court of Appeal explained, the 2003 crime was not more inflammatory than the charged conduct and, having the attributes of a typical carjacking and robbery, "was not the sort to unhinge an Alameda County jury of this day and age." Cal. Ct. App. Opinion at 9.

"[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Bearing in mind the extremely general nature of the Supreme Court's articulation of a principle of "fundamental fairness" – i.e., evidence that "is so extremely unfair that its admission violates 'fundamental conceptions of justice'" may violate due process, *Dowling*, 493 U.S. at 352, – the California Court of Appeal's rejection of Mr. Jones' due process claim was not contrary to or an unreasonable application of clearly established federal law as set forth by the Supreme Court. *See generally Holley*, 568 F.3d at 1101 (denying writ because, although Supreme Court "has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." (internal citation omitted)).

B.  No Certificate of Appealability

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of

appealability is **DENIED**.

## VI. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED** on the merits. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: June 30, 2016

_____
EDWARD M. CHEN
United States District Judge